IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| SHAD MILLS | CASE NO. 3:23-CV-2284 |
| Petitioner, | DISTRICT JUDGE BENITA Y. PEARSON |
| vs. | |
| WARDEN THOMAS WALLACE, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT AND RECOMMENDATION** |

Shad Mills filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Mills is currently in custody at the North Central Correctional Complex serving a sentence of imprisonment for 21 to 26 and 1/2 years imposed by the Erie County Court of Common Pleas in *State v. Mills*, 2021-CR-086. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Mills's petition.

### Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

2 525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting

that presumption by clear and convincing evidence. *Id.*

The Ohio Court of Appeals for the Eighth Appellate District summarized

the facts underlying Mills's conviction as follows:

> {¶2} Shad Mills was indicted on charges of aggravated burglary, a violation of R.C. 2911.11(A)(1) and (B), a first-degree felony (Count 1), felonious assault, a violation of R.C. 2903.11(A)(1) and (D)(1)(a), a second-degree felony (Count 2), and a repeat violent offender specification on Count 1 under R.C. 2941.149(A). The matter proceeded to a jury trial, where the following evidence was presented.

> {¶3} Shad Mills and A.C. have known each other for over 30 years and have been in an on-again-off-again romantic relationship. On November 12, 2020, Mills and his friend, Tim, were building a patio in A.C.'s backyard. Tim left, but A.C. invited Mills to stay to watch football and eat pizza. At some point, Mills received a call from Tim. Mills told A.C. that Tim's car had broken down and asked if he could use A.C.'s vehicle to go get him. A.C. agreed.

> {¶4} At least two hours passed and Mills did not return with A.C.'s vehicle and did not answer her phone calls or text messages; A.C. became agitated. When her teenaged daughter returned home from work, A.C. asked her to take her to Tim's house. Mills was there. He ran through the living room and out the door, and A.C. followed. Mills looked like he was on drugs. A.C. told him that she was there to get her vehicle and she told him to leave her alone. He gave her the car keys.

> {¶5} Around midnight on November 13, 2020, Mills and A.C. exchanged text messages. A.C. told Mills that she did not love him anymore, did not want to be with him, and to leave her alone. Mills denied that he had done anything wrong. Nevertheless,

A.C. told him that she wanted him "to get everything you have here and leave me alone." But she also said: "Don't knock on my door[.] I'm going to bed[.]" A.C. explained that what she meant was that she did not want Mills to come to her home. Mills texted A.C. that he still planned to come by her house with Tim at around 11:00 a.m. to finish up the work he was doing.

{¶6} A.C. fell asleep on her couch after texting with Mills. Later that morning, around 8:00 a.m., A.C. awoke to Mills standing over her. He grabbed her by the hair and ripped her off the couch. Mills flung her to the ground and repeatedly kicked her in the head with steel-toed boots that she had bought for him, and he punched her in the mouth several times. Mills told A.C.: "You're never going to leave me, bitch," "this is the last day you're gonna live," and "you'll never see your daughter again." A.C. faked an asthma attack, but Mills told her that he would not call anyone to help her.

{¶7} Mills took A.C. into the bathroom and put Vaseline on the cut on her head. He then let A.C. get some water and sit on the couch. Mills began scrolling through his cellphone; because he was distracted, A.C. grabbed her phone and called 9-1-1, but did not say anything to the dispatcher. Mills discovered that she called 9-1-1, took A.C.'s phone and threw it, then ran out the door. After he left, A.C. redialed 9-1-1. She also called her daughter, who was at school, and asked her to take her to the hospital.

{¶8} Police and emergency medical services arrived at A.C.'s home. A.C. met them outside and did not allow them in her home, allegedly because she did not want to put her dogs away. She showed them the bedroom window she believed Mills must have used to enter the house. There was a beer on some chairs that were stacked in front of the window. A.C. declined to be transported to the hospital by EMS; she told first responders that her daughter was on her way to take her.

3

{¶9} At the hospital, A.C.'s scalp wound was stapled, and she received four stitches in her mouth, where her tooth had penetrated her lip; she was evaluated for a concussion. She experienced dizziness, headaches, and pain from her injuries. Her elbow also hurt. Photographs depict the laceration to her scalp, the wound to her lip, and the bruising to her arms, neck, and face. A.C. texted photos of her injuries to Mills.

{¶10} A.C. testified that Mills did not live with her. She insisted that she always locks her doors and Mills does not have keys to her house. She believed that Mills entered the home through the bedroom window because he and Tim were using that window to run an extension cord into the house, and she neglected to lock it.

{¶11} The jury found Mills guilty of aggravated burglary and the lesser-included offense of assault, a violation of R.C. 2903.13(A), a first-degree misdemeanor. Following a separate hearing, Mills was determined to be a repeat violent offender. The trial court sentenced Mills to a minimum prison term of 11 years and a maximum prison term of 16 years and 6 months on Count 1, and a definite jail term of 180 days on Count 2, to be served concurrently to each other, and an additional prison term of ten years on the repeat violent offender specification, to be served before and consecutive to the sentences imposed on Counts 1 and 2. The conviction and sentence were memorialized in a judgment journalized on May 13, 2022.

*State v. Mills*, 2023-Ohio-1094, 2023 WL 2728798 (Ohio App. 6 Dist. 2023).

**Procedural background**

*Direct appeal*

On June 1, 2022, Mills filed a timely notice of appeal with the Sixth District Court of Appeals. Doc 8-1, at 42. In his revised supporting brief, which he filed six months later, Mills raised two assignments of error:

> 1.     The jury's verdict was against the manifest weight of the evidence, the sufficiency of the evidence, and the court erred in denying the defendant's criminal Rule 29 motion for acquittal.
>
> 2.     The trial court erred and abused its discretion by admitting evidence and giving a "consciousness of guilt" jury instruction concerning appellants' statement of suicidal ideations and apologies.

*Id.* at 54, 56. The court of appeals affirmed Mills's conviction on March 31, 2023. *See State v. Mills*, 2023-Ohio-1094, 2023 WL 2728798 (Ohio Ct. App. 2023).

On May 12, 2023, Mills filed a timely notice of appeal with the Ohio Supreme Court. Doc. 8-1, at 112. In his memorandum in support of jurisdiction, Mills asserted a single proposition of law: "Ineffective Assistance of Counsel." Doc. 8-1, at 115. On July 5, 2023, the court declined under Rule 7.08(B)(4) of its rules of practice to accept jurisdiction of the appeal. Doc 8-1, at 150.

5

*Federal habeas corpus petition*

On October 20, 2023,[1] Mills filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1, at 15. His petition included the following three grounds for relief:

> 1.    The jury's verdict was against the manifest weight of the evidence, the sufficiency of the evidence, and the court erred in denying the defendant's criminal Rule 29 motion for acquittal!
>
> 2.    The trial court erred and abused its discretion by admitting evidence and giving a "consciousness of guilt" jury instruction concerning appellants' statement of suicidal ideations and apologies.
>
> 3.    Ineffective Assistance of Counsel

Doc. 1, at 5–8.[2]

The Warden filed a return, Doc. 8, Mills filed a traverse, Doc. 9, the Warden filed a sur-reply, Doc. 10, and Mills filed a response to the Warden's sur-reply, Doc. 11.[3]

---

[1]    A petition is deemed filed when a petitioner places it in the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

[2]    For purposes of brevity, the Court has not included the statements of supporting facts associated with each of the Grounds listed in Mills's Petition.

[3]    Mills did not seek or obtain leave of court to file a response to the Warden's sur-reply. The Court's initial order does not contemplate the filing of such a document, nor do the federal Habeas Rules. The Court, thus, has not considered this document.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in

a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the

8

petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13

(2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

Before proceeding to the enumerated Grounds, the Court notes that Mills frames the discussion of his Grounds as "Arguments in Support of Petitioner's Claims of Actual Innocence." *See* Doc. 9, at 11. This introductory section header tends to indicate that all of the arguments in Mills's Traverse are made in an effort to show his actual innocence. He does not, however, present any specific Ground in his Petition that advocates that he is actually innocent. And, even if he had, stand-alone actual innocence claims are not cognizable for federal habeas purposes. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). But, to the extent that Mills's actual-innocence arguments are

made in an effort to avoid procedural default, the Court addresses his arguments in the following analysis where appropriate.

Additionally, Mills's Petition makes two assertions that could be construed as arguments to excuse his procedural default. But Mills neither connects these assertions to any specific Ground nor does he expand on them with any legal support in his Traverse. First, Mills claims that he had difficulty filing because he "did not know how to." Doc. 1, at 5. Second, Mills asserts that he failed to present all his claims to the Ohio Supreme Court "because of breakdown in communication between both trial and appellate counsels." Doc 1, at 12. Neither argument provides sufficient cause to excuse his procedural default. That Mills claims he had difficulty understanding the filing process or "did not know how to" file does not provide cause. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (ignorance of the law, and *pro se* status are insufficient to establish cause for procedural default). And, as discussed below, Mills has not properly raised any ineffective assistance of counsel claims arising out of an alleged "breakdown in communication" between he and his appellate counsel. So claims of ineffective assistance cannot serve to excuse to his default. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000) (holding that an ineffective assistance of appellate counsel claim asserted as cause to excuse another defaulted claim can itself be procedurally defaulted).

*1. Ground One is procedurally defaulted and otherwise meritless.*

Mills's first Ground asserts that his conviction is against the manifest weight of the evidence, the evidence was insufficient to support his conviction, and his motion for acquittal should have been granted. Doc. 1, at 5. For all of the following reasons, Mills's Ground One claim should be dismissed.

A habeas petitioner must fairly present his constitutional claims not only to the state trial and appellate court, but also to the state's highest court to avoid procedural default. *Caver*, 349 F.3d. at 346. Under Ohio's res judicata doctrine a defendant is precluded from raising a claim in post-conviction proceedings that could have been, but was not, raised at trial or on direct appeal. *Hanna v. Ishee*, 694 F.3d 596, 613–14 (6th Cir. 2012); *see also State v. Wade,* 2022 Ohio 1008, 2022 WL 898328, at *3–5 (Ohio Ct. App. 2022); *see State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996) (reaffirming the rule from *State v. Perry*, 226 N.E.2d 104 (1967)). This state procedural rule constitutes an independent and adequate state ground to bar a claim from federal habeas review. *See Hanna*, 694 F.3d at  614.

On direct appeal to the court of appeals, Mills raised the same issue that he now presents as his Ground One claim. Doc. 8-1, at 56. The state appellate court considered and rejected his arguments. *See Mills*, WL 2728798, *4–6. Mills then filed an appeal with the Ohio Supreme Court. Doc. 8-1, at 112. But Mills's memorandum in support of jurisdiction to the Ohio Supreme Court did not raise any issue related to the weight or sufficiency of the evidence or his

argument that he should have been acquitted. *See id.* at 114–20. Instead Mills—acting *pro se*—raised a single, new issue in his appeal to the state supreme court: ineffective assistance of counsel. *Id.* at 115, 119.

Mills's failure to present any aspect of his Ground One claim on appeal to the state supreme court forecloses review of it for federal habeas purposes. *Caver*, 349 F.3d. at 346. Mills could have but did not present his Ground One claim at each level of direct review. And the arguments in Mills's Ground One claim are all based on facts within the trial court record. His arguments thus must have been raised, if at all, on direct appeal. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016). He did not do so and as a result Mills's Ground One arguments are procedurally defaulted.

Mills may avoid default by demonstrating cause for his default and that prejudice will result if his claim is not now considered, or by showing that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Coleman*, 501 U.S. at 750. Mills makes no explicit argument related to cause or prejudice to excuse his procedural default of Ground One. *See* Doc. 9, at 10–12. He does however generally argue that he is actually innocent. He does not frame this argument as a basis to excuse his procedural default, but the Court liberally construes Mills's Traverse and has considered whether Mills's actual innocence argument could excuse his default. It does not.

A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Although Mills fervently claims he is innocent, Mills's arguments related to his innocence reference state court proceedings, entirely separate from the sentence and conviction at issue in this matter. *See* Doc. 9, at 12. Specifically, Mills attaches to his Traverse filings and describes events that took place in relation to a separate state trial court matter from 2010. *See* Doc. 9 (including exhibits showing that proceedings from 2010 that were dismissed and a list of state court cases in which it appears Mills has been involved). These documents do not demonstrate his factual innocence of the conviction at issue.[4] *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'actual innocence' means factual innocence, not mere legal insufficiency."). Instead, the documents attached appear to demonstrate that while incarcerated on unrelated charges, he initiated an action in 2010 against certain state officials. *See e.g.*, Doc. 9-2 (criminal complaint initiated by Mills against various state actors, including state municipal court judge Eric

---

[4]      The evidence that Mills attempts to include is also not new; it pertains to other state court proceedings in which Mills was involved. These records were all available at the time of trial. Additionally, this evidence, although public records, does not appear to have been used at trial and is thus outside of the trial court record. Mills has not made any motion to expand the record or engage in discovery. So this evidence is not relevant for the purposes of resolving Mills's instant habeas petition.

O'Brien); *see also* Doc. 9-6 (order dismissing the 2010 case in its entirety). Mills's argument related to these prior state proceedings appears for the first time in his Traverse and the exhibits on which he relies are not "*new* reliable evidence" because the evidence of those proceedings was available during his trial yet was not raised in his appeal to the state court of appeals. *See* Doc. 8-1, at 54–65. For the reasons stated, Mills's Ground One claim is procedurally defaulted.

Additionally, Mills's manifest weight claim is not cognizable on federal habeas review. *See Jaeger v. Wainwright*, No. 1:19-cv-2853, 2023 WL 6554265, at *22 (N.D. Ohio Sept. 1, 2023) (citing and discussing cases), *report and recommendation adopted*, 2023 WL 6282944 (N.D. Ohio Sept. 27, 2023); *but see Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007). But to the extent that Mills has raised a sufficiency of the evidence claim, *see Nash*, 258 F. App'x at 765, the Court could address the merits of the claim. Even still, under AEDPA, if this Ground were not defaulted, the Court would owe deference to the state court's decision on the merits. 28 U.S.C. § 2254(d).

Mills does not acknowledge that manifest-weight claims are not cognizable in federal habeas actions. Doc. 9, at 11–12. And he does not clearly address the deferential review owed to the state court's resolution of the merits of his Ground One claim on direct appeal. Instead, he generally cites AEDPA and cases stating what it means for a state-court's decision to be "unreasonable." *See* Doc. 9, at 2–3. He makes no attempt to show whether or

17

why the court of appeals' decision was unreasonable. He also does not argue that the court of appeals erred in evaluating the sufficiency of the evidence.

To justify habeas relief, Mills has the burden to overcome the deference this Court owes the state court's sufficiency findings. *See Brown*, 567 F.3d at 205. Mills has not carried that burden. Instead, Mills baldly asserts that he experienced "sham legal process, judicial and prosecutorial bias, and conflict of interest" and "asserts that his Ground One has merit[] to warrant the writ being granted[.]" Doc. 9, at 12. Notably, Mills's Ground One claim does not allege judicial or prosecutorial bias or prosecutorial misconduct. Instead, he asserts this argument for the first time, in his Traverse.[5] For this reason alone, the Court need not consider the argument. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000) (claims raised for the first time in a traverse are improper); *see Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019). Additionally, his argument about judicial and prosecutorial bias or a conflict of interest appears to be based on cases from 2010 and 2019, which are entirely unrelated to the sentence and conviction for which he seeks federal habeas relief. *See* Doc. 9, at 8–10. These prior, state court matters are not relevant to this Court's evaluation of the reasonableness of the court of appeals' decision under the deferential standard set out in AEDPA. Even putting Mills default

---

[5]    This argument was also not raised in Mills's direct appeal to the court of appeals. Doc. 8-1, at 54. So even if the issues of judicial or prosecutorial misconduct and conflicts of interest were appropriately raised, which they weren't, the issues would be procedurally defaulted because they were not fairly presented in state courts.

aside, it should be axiomatic that because Mills has not attempted to carry his burden, he failed to carry that burden.

For all of the reasons stated, Mills's Ground One claim should be dismissed.

### 2. Ground Two is procedurally defaulted, non-cognizable, and otherwise meritless.

Mills's Ground Two claim relates to a jury instruction on "consciousnes of guilt," which he claims was improperly given. Doc. 1, at 7. As described above in relation to Ground One, to avoid procedural default, Mills was required to fairly present his second Ground not only to the state trial and appellate court, but also to the state's highest court. *Caver*, 349 F.3d. at 346. Similarly, to avoid the consequences of Ohio's res judicata doctrine, Mills was required to raise his second Ground at each available level on direct appeal. *Hanna*, 694 F.3d at 614. Mills has not done either of these things. As a result, his Ground Two claim is procedural defaulted and should be dismissed.

Mills raised the same issue that he now presents as his Ground Two claim in his direct appeal to the state court of appeals. Doc. 8-1, at 56. The state court considered his related arguments and rejected them the merits. *Mills*, WL 2728798, *4–6. Mills then filed an appeal with the Ohio Supreme Court. Doc. 8-1, at 112. But Mills's memorandum in support of jurisdiction did not present the issue now raised as his Ground Two claim. *Id.*

Mills could have but did not raise his Ground Two claim at each level of direct review. As with Ground One, Mills failed to fairly present his Ground

Two claim at each available level of direct appeal, despite its availability at that time. So he is procedurally barred from raising it now. *Caver*, 349 F.3d. at 346; *Hill*, 842 F.3d at 936 (explaining that claims based on evidence contained in the trial record or based on the trial must be raised on direct appeal in order to avoid procedural default). Mills's Ground Two claim is, thus, procedurally defaulted.

Again, Mills makes no explicit argument to excuse his procedural default of Ground Two. *See* Doc. 9, at 13–14. Mills does not address whether he could avoid default by showing cause and prejudice. *See id.* at 13–14; *see also Coleman*, 501 U.S. at 750. Unlike Mills's Ground One argument, the portion of his Traverse that addresses his Ground Two claim makes no argument related to his claims of actual innocence. Doc. 9, at 13–14. Because Mills's Ground Two claim is procedurally defaulted and he makes no discernable argument to excuse that default, Ground Two should be dismissed.

Additionally, Ground Two is not cognizable for federal habeas review. Mills's Ground Two claim is that the trial court erred by giving a consciousness of guilt instruction concerning his statements related to suicidal ideations and apologies. Doc. 1, at 7. Mills generally argues that the trial judge gave an improper jury instruction, over the objection of his trial counsel. *See* Doc. 9, at 13. He asserts that this jury instruction was improper because "it was given in Bad Faith with an Evil Eye and prejudicial to Petitioner's right to an unbias[ed] Judge and Jury, and the jury lost its way and resulted in a jury

20

verdict being contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." *Id.* To prevail on federal habeas review, a petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Mills has not made such a showing. As the court of appeals explained:

> **{¶28}** In his second assignment of error, Mills challenges the trial court's decision to instruct the jury on consciousness of guilt. He acknowledges that an accused's flight, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible evidence of consciousness of guilt. He claims, however, that the behavior that prompted the court to provide the instruction here–his apologies and talk of suicide–were related to the termination of his relationship with A.C. and not evidence that Mills had committed a crime.

> **{¶29}** The state responds that the instruction given by the court was a correct statement of the law and was supported by the facts of the case, and reasonable minds could conclude that Mills's apologies and talk of suicidal ideations were motivated by his consciousness of guilt. It insists that the context of the statements makes clear that they were in relation to the assault he committed on the victim on the morning of November 13, 2020. The state contends that Mills's apologies and talk of suicide qualify as "related conduct" for purposes of providing the consciousness-of-guilt instruction.

> **{¶30}** The trial court gave the following jury instruction:

Consciousness of Guilt, Apologies and Suicidal Comments. Testimony and evidence was admitted during—indicating that the Defendant made apologies and suicidal comments to [A.C.] regarding the alleged incident on November 13, 2020. You are instructed that such actions by Defendant alone does not raise a presumption of guilt, but it may tend to indicate the Defendant's consciousness of guilt.

If you find that the facts do not support that the Defendant made apologies or suicidal comments to [A.C.] as stated above, or if you find that some other motive prompted the Defendant making apologies and suicidal comments as stated above, or if you are unable to decide what the Defendant's motivation was, then you should not consider this evidence for any purpose.

However, if you find that the facts support that the Defendant made apologies and suicidal comments to [A.C.] as stated above, and if you decide that the Defendant was motivated by a consciousness of guilt, you may, but are not required to, consider that evidence in deciding whether Defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give this evidence.

**{¶31}** Trial courts are charged with giving juries correct and comprehensive instructions that adequately reflect the argued issues in the given case before them. *State v. Sneed,* 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992). "Requested jury instructions should ordinarily be given if they are correct statements of law that are applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the instruction." *Miller v. Defiance Med. Ctr.,* 6th Dist. Lucas No. L-06-1111, 2007-Ohio-7101, ¶ 40, citing *Murphy v. Mfg.* Co., 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). We review the trial court's instructions to the jury for an abuse of discretion. *State v. White,* 2013-Ohio-51, 988 N.E.2d 595, ¶ 97 (6th Dist.), citing *State v.* 6th Dist. Huron No. H-10-001, 2010-Ohio-6221, ¶ 15.

**{¶32}** "'It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, *related conduct,* are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" (Emphasis in original.) *State v. Williams,* 79 Ohio St.3d 1, 11, 679 N.E.2d 646 (1997), quoting *State v.* 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969). Ohio courts have concluded that apologies and expressions of suicidal thoughts may constitute a "consciousness of guilt." *See State v. Tvaroch,* 11th Dist. No. 2012-T-0008, 2012-Ohio-5836, 982 N.E.2d 751, ¶ 25-26; *State v. Wrasman,* 3d Dist. Auglaize No. 2-20-03, 2020-Ohio-6887, ¶ 27 (apologies and suicide threats constituted consciousness of guilt); *State v. Williams,* 8th Dist. Cuyahoga No. 106266, 2018-Ohio-3368, ¶ 45 (suicide attempt was evidence of consciousness of guilt); *State v. Pryor,* 5th Dist. Stark No. 2013CA00016, 2013-Ohio-5693, ¶ 34 (apologies to victim indicated consciousness of guilt); *State v. Teal,* 6th Dist. No. L-15-1280, 2017-Ohio-7202, 95 N.E.3d 1095, ¶ 59 (apology to victim demonstrated consciousness of guilt); *State v. Crawford,* 9th Dist. Lorain No. 19CA011567, 2021-Ohio-1686, ¶ 20 (apology could be viewed as consciousness of guilt). If supported by the evidence and not misleading, this evidence may merit a consciousness-of-guilt jury instruction. *Tvaroch* at ¶ 43.

**{¶33}** In *Tvaroch,* the defendant argued that there was no evidence that his apology for "what happened" had anything to do with the incident giving rise to the charges against him. After reviewing the context of defendant's statements, the court determined that the jury could reasonably infer that defendant's apology did pertain to the incident at issue. It, therefore, concluded that the trial court's consciousness-of-guilt instruction was supported by the facts and the trial court did not abuse its discretion in giving the instruction. The court noted that this was especially true given that the trial court also cautioned the jury that it could completely disregard the evidence if not believed,

and even if believed, (1) the evidence would not rise to a presumption of guilt, and (2) the jury was not *required* to consider that evidence in deciding defendant's guilt.

**{¶34}** Here, A.C. testified that after she texted Mills pictures of her injuries, Mills responded: "Im so fucking dumb ass of me im a fucking idiot. [sic]" A.C. told Mills that he embarrassed and hurt her, and he could have killed her. Mills responded, indicating that he was suicidal. He also apologized to her several times:

> This is the last call i will ever make too you im sorry for everything i hurt you. I love you in my dying days in death i still love you.
>
> ***
>
> I caused you so much pain and suffering i hurt bad when i look at you in those fucked up pies im truly am sorry try and forgive me do not hold onto the hate it was what ate me alive. Im so hurt for you
>
> ***
>
> The pain in your eyes that i see i can no longer deal with this shit my mind spinning out of control my thoughts coming and going i hurt the woman im so much claimed i love and who I was to protected im tired of these changes in my mind my heart loves [sic]

Screenshots of the text messages were admitted as a trial exhibit.

**{¶35}** Additionally, Mills called A.C. from the Erie County Jail on December 16, 2020. During that phone call, Mills told A.C. that he wanted to call her again. She expressed reluctance and told him that he hurt her "so bad" and could not "in good conscience" continue talking to him. Mills responded that he knew he hurt her and that he was speaking

24

with a psychiatrist. Mills called A.C. again on December 20, 2020. He told her: "I know that what I put you through was bullshit, but you know, and I know, that when I'm not on any drugs or anything like that, I'm a good dude." He admitted that he had gone too far. In a third phone call, also on December 20, 2020, he told A.C. that what he did was not her fault, it was because of the drugs he was on, and if he "had to sit it out a couple years, so what? I deserve that." A.C. told Mills that she has nightmares about how he had acted "because it was just so scary." Mills rationalized that perhaps someone had cut the drugs he took with fentanyl.

**{¶36}** We find that given the context of Mills's statements, a reasonable juror could find that his apologies and suicidal thoughts related to the November 13, 2020 assault. And like the court in *Tvaroch,* the trial court the jury cautionary instructions that the evidence cannot give rise to a presumption of guilt, it could completely disregard the evidence if it did not believe that the statements were made or did not believe the statements were motivated by the incident giving rise to the offense, and it could decline to consider the evidence even if believed.

**{¶37}** We find that the trial court did not err when it gave the consciousness-of guilt instruction. Mills's second assignment of error is not well taken.

*Mills*, 2023 WL 2728798.

Although Mills generally asserts that the trial court's jury instruction was "contrary to, or involved an unreasonable application of, clearly established Federal Law, ad determined by the Supreme Court of the United States," Mills does not provide this Court with any example or authority that shows *why* the instruction was improper. *See* Doc. 9, at 13. Instead, Mills asserts without citation that "no State or Federal Court has upheld the giving

of a 'consciousnes of guilt' instruction based on inadmissible evidence." *Id.* But here, the evidence on which the jury instruction was based was admissible and was admitted.[6] Because Mills has not shown that a constitutional violation occurred based on the jury instruction itself, he is not entitled to relief. *See Estelle*, 502 U.S. at 72.

For all of the reasons stated, Mills's Ground Two should be dismissed.

### 3. Ground Three is procedurally defaulted.

In his Ground Three claim, Mills raises ineffective assistance of counsel. It appears that Mills challenges the effectiveness of both his trial and appellate counsel's representation in state court. Doc. 9, at 14 ("Petitioner argues that trial and appellate counsel failed to object to the alleged judicial bias and conflict of interest..."). Both arguments are procedurally defaulted.[7]

---

[6] The face of Mills's Ground Two does not discernably raise any issue related to the admissibility of the evidence underlying the trial court's jury instruction on consciousness of guilt. But, even if it had, a claim related to the trial court's decision on the admissibility of evidence is also generally not a cognizable basis on federal habeas review. *See e.g.*, *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983) ("[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus."); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court does not "reexamine state-court determinations on state-law questions," including the admissibility of evidence).

[7] The face of Mills's petition does not clearly allege ineffective assistance of trial or appellate counsel. He simply states "Ineffective Assistance of Counsel" and provides the following as Supporting Facts: "On April 12, 2022, Petitioner went to trial on the charges, counsel wanted to work out a deal and Petitioner refused due to the fact he was actually innocent of violating any laws, and maintains his being innocent to this date!" Doc. 1, at 8.

Any claim of ineffective assistance of trial counsel is triply defaulted. Mills argued to the Ohio Supreme Court in his direct appeal that his trial counsel was ineffective. *See* Doc. 8-1, at 114–20. But he failed to raise this issue to the court of appeals. *See id.* at 54–65. Without comment, the Ohio Supreme Court declined to review Mills appeal. *Id.* at 150. In this circumstance, this Court will presume that the Ohio Supreme Court applied its rule of "long standing" that it will not consider issues not raised before the court of appeals. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) ("Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar."); *State v. Phillips*, 272 N.E.2d 347, 352 (1971) (explaining that the court will not consider constitutional claims not raised and preserved in the Ohio court of appeals). This procedural rule presents an adequate and independent basis to foreclose review. Further, even putting this aside, Mills failure to raise this ineffective assistance claim before the state court of appeals means that he did not fairly present it. *See Castille v. Peoples*, 489 U.S. 346, 349–51 (1989).

Moreover, Ohio has a "dual-track system" for raising ineffective-assistance-of-counsel claims. *See Hill*, 842 F.3d at 936. Grounds for relief that are "based on evidence wholly *within* the trial record must be brought on direct appeal." *Id.* "[C]laims based on evidence *outside* the trial record," on the other hand, "cannot be brought on direct review and must be raised in a petition for state post-conviction relief." *Id.* And if an ineffective-assistance claim "relies

27

on evidence *within the trial record*" such that the claim could have been brought on direct appeal, Ohio's res judicata rule will bar post-conviction review of the claim. *Id.* (emphasis added). "Ohio courts routinely apply the res judicata rule to" such claims. *Smith v. Bagley*, 642 F. App'x 579, 586 (6th Cir. 2016) (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)); *see Williams*, 460 F.3d at 806 ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.") (citing *Engle*, 456 U.S. at 125 n.28). By contrast, an Ohio Appellate Rule 26(B) application to reopen is the method to raise ineffective assistance of *appellate* counsel. *See* Ohio App. R. 26(B)(1). Such an application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id.*

To the extent that Mills's claim for ineffective assistance of trial counsel would have been based on evidence originating from his original trial, this claim should have been raised on his direct appeal. *Williams*, 460 F.3d at 806. But Mills, then represented by separate appellate counsel, failed to raise any ineffective assistance of trial counsel claim on his direct appeal to the court of appeals. *See* Doc. 8-1, at 56; *Mills*, 2023 WL 2728798. Although Mills did raise an ineffective assistance of counsel claim on appeal to the state supreme court, he failed to present the claim at each level of direct appeal. So he has not fairly

presented an ineffective assistance of trial counsel claim as required to preserve the issue for federal habeas purposes. *See Williams*, 460 F.3d at 806.

Additionally, Mills has not clearly asserted that his claim for ineffective trial counsel was based on evidence outside of the trial record. But, even if he had, Mills never filed a state post-conviction petition challenging his trial counsel's representation based on facts outside of the record, as Ohio's "dual-track system" permits. *See Hill*, 824 F,3d at 936 (holding that claims based on evidence outside of the trial record must be raised in a petition for post-conviction relief). The time for filing a petition for post-conviction relief under Ohio law has passed. *See* Ohio Rev. Code Ann. § 2953.21(A)(2)(a) (providing 365 days from filing of the trial transcript to file a petition for post-conviction relief). And, in any event, Mills has made no indication that he desires to file any such petition. *See generally* Docs. 1, 9. So Mills's claim of ineffective trial counsel is procedurally defaulted. *State v. Summers*, No. 83-B-18, 1983 WL 6700, at *2 (Ohio Ct. App. Aug. 15, 1983) (when not raised on direct appeal, claims of ineffective trial counsel are later barred by res judicata); *see Williams*, 460 F.3d at 806 ("If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted") (citing *Engle*, 456 U.S. at 125 n. 28).

The issue of ineffective assistance of trial counsel, thus, cannot provide a basis for federal habeas relief unless Mills can show actual prejudice and cause for his default. *See Coleman*, 501 U.S. at 750. Mills has not clearly argued

cause or prejudice to excuse his default. To the extent that a failure to properly raise ineffective assistance of trial counsel could be based on ineffective appellate counsel, the latter claim cannot provide cause in this instance because it is itself defaulted as explained below. *See Edwards*, 529 U.S. at 453. And, beyond the general assertions of his innocence discussed earlier, which are insufficient to show factual innocence for federal habeas purposes, *Schlup*, 513 U.S. at 324, Mills has not argued that a fundamental miscarriage of justice would result if his default is not excused.

As to Mills's claim for ineffective assistance of appellate counsel, that claim is also procedurally defaulted. Ohio Appellate Rule 26(B) provides that an application to reopen a direct appeal based on ineffective assistance of appellate counsel must be filed within 90 days after the court of appeals' judgment. *See* Ohio App. R. 26(B)(1). The court of appeals entered its judgment on March 31, 2023, so Mills had until June 29, 2023, to file a Rule 26(B) application. He did not do so.

As with his ineffective-assistance-of-trial-counsel claim, Ohio procedural rules provided Mills's with an opportunity to raise an ineffective assistance of appellate counsel claim, he did not do so, and the time to do so has passed. He has not alleged in his federal habeas filings any reason indicating good cause for filing a late application, now over a year after it would have been due. *See* Ohio App. R. 26(B)(1) (providing that a Rule 26(B) application must be filed within 90 days of the journalization of the appellate

court's decision, unless "the applicant shows good cause for filing at a later time"); *see also Prieto v. Schweitzer*, No. 4:18-cv-222, 2019 WL 2605639, at *8 n.5 (N.D. Ohio May 31, 2019) (the petitioner's failure to file an Ohio Appellate Rule 26(B) application to reopen or provide any reason why he had not filed one procedurally defaulted any ineffective-assistance-of-appellate-counsel claims), *report and recommendation adopted*, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021); *Rice v. Welch*, No. 3:10-cv-1916, 2014 WL 4794585, at *26 (N.D. Ohio Sept. 23, 2014). Mills's Ground Three claim of ineffective assistance of appellate counsel is thus procedurally defaulted. *See Williams*, 460 F.3d at 806.

Mills, again, does not make an any discernable argument related to cause or prejudice to excuse his failure to properly or timely raise an ineffective assistance of appellate counsel claim. And his assertions related to his actual innocence remain insufficient to excuse his default for all of the reasons previously explained. *See Schlup*, 513 U.S. at 324. Because Mills has not made any requisite showing to excuse the procedural default of his ineffective assistance of appellate counsel claim, that claim cannot be asserted as cause to avoid the procedural default of his other claims. *See Edwards*, 529 U.S. at 453.

For all of the reasons stated, Mills's Ground Three claim is procedurally defaulted and should be dismissed.

**Conclusion**

For the reasons set forth above, I recommend that Mills's Petition be dismissed.

Dated: October 7, 2024

 _/s/ James E. Grimes Jr._
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).